UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AKIDA BERRY,

           Plaintiff,

v.                                                           Case No. 08-CV-421

LT. PETERMAN, R.N. DAVE REICH,
and DR. BUTLER,

           Defendants.

## ORDER

The plaintiff, Akida Berry, who is currently incarcerated at the Racine Correctional Institution, is proceeding *pro se* under 42 U.S.C. § 1983, on an Eighth Amendment claim that the defendants were deliberately indifferent to his serious need for dental care while he was confined in the Waushara County Jail. Defendants Reich and Butler filed their motion for summary judgment on January 28, 2009, as did defendant Peterman, who is represented by separate counsel. Both motions are addressed below.

**STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a

dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

## RELEVANT UNDISPUTED FACTS

The plaintiff, Akida Berry, is a Wisconsin state prisoner who was detained at the Waushara County Jail ("the Jail") from March 28, 2008, until June 6, 2008, under contract with the Wisconsin Department of Corrections ("the DOC"). Defendant George Peterman is the Jail Administrator. Defendant Karen Butler is a medical doctor and defendant Dave Reich is a registered nurse. Both defendants Butler and Reich were contracted to provide medical services to inmates at the Jail.

About a month before Berry was transferred to the Jail, he underwent a DOC dental assessment on February 25, 2008, and received a Dental Classification of "20" signifying that he had "Routine or Chronic Dental Needs" with "No acute episode likely in the next six months." Berry's DOC records reflect that his dental condition deteriorated by the time he left the Jail. At his next DOC placement after leaving the Jail, Berry had a "Priority Appt" on June 12, 2008. The notes from that date on Berry's DOC dental chart state: that Berry's #19 tooth "was clearly necrotic"; that "extraction was recommended"; and that a pulpotomy (root canal) was performed on tooth #19 the same day.

During his ten-week stay at the Jail, Berry filed more than 20 complaints regarding his escalating tooth pain, which he stated caused him to suffer extreme

-3-

pain that interfered with normal eating and sleeping. On April 3, 2008, Berry filed a request to be seen by a dentist to get his tooth fixed. The Jail did not have a dentist on staff, and Berry was examined by defendant Butler, a medical doctor, on April 17, 2008, and again on April 24, 2008. Butler performed oral screenings during both exams, but did not see any signs of infection or an emergency dental issue. To address Berry's complaint of dental pain, Butler continued Berry's prescription for extra-strength Tylenol, which Berry was already taking for back pain. On April 25, 2008, Berry's prescription was changed to Motrin due to his repeated complaints that the Tylenol was not working, but Berry continued to report that his toothache and headaches were getting worse.

Defendant Reich, a registered nurse, responded to most of Berry's complaints. On May 1, 2008, Reich advised Berry to increase his fluids, brush his teeth lightly, and avoid eating hard or sticky items, and on May 19, 2008, Reich offered to schedule another appointment with the doctor, but Berry did not request another appointment with the doctor. Instead, Berry continued to ask to see a dentist, stating that his pain was too serious to wait until he was transferred from the Jail, and that neither the doctor nor nurse was qualified to treat his dental needs.

Defendant Peterman, the Jail Administrator, never received the April 24, 2008, complaint Inmate Communication Form ("ICF") that Berry addressed to him and, therefore, did not respond to it. Peterman investigated Berry's May 1, 2008 complaint/concern ICF by consulting medical staff and deferring to their

-4-

Case 2:08-cv-00421-JPS   Filed 09/23/09   Page 4 of 16   Document 81

determination that Berry was not suffering from an infection and was receiving pain medication. Peterman also spoke directly with Berry on or around May 12, 2008, and looked at Berry's tooth upon request, but explained that he lacked the expertise to diagnose or treat this type of problem. Peterman handled Berry's May 18, 2008 appeal ICF by forwarding it to medical staff and notifying the DOC.

Berry received dental treatment at his next DOC placement, on June 12, 2008, less than a week after leaving the Jail on June 6, 2008.

## ANALYSIS

Defendant Peterman argues: that Berry failed to exhaust his administrative remedies; that Berry did not suffer from an objectively serious medical need; that Peterman did not act with deliberate indifference; and that Peterman is entitled to qualified immunity.

Defendants Reich and Butler argue that Berry did not suffer from an objectively serious dental need and that neither Reich nor Butler was deliberately indifferent to Berry's dental concerns.

In response, Berry contends: that he did exhaust the administrative remedies that were available to him; that his diagnosed dental need and severe pain constituted an objectively serious medical need; that all three defendants were deliberately indifferent to his need; and that Peterman is not protected by qualified immunity because the obligation to address painful dental conditions was clearly established.

-5-

## Exhaustion of Administrative Remedies

Under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), exhaustion is a threshold issue to be resolved before addressing the merits of a case. The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), provides that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)a. Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). One purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation. *Id.* at 524-25. To provide officials with sufficient notice, inmates must file grievances at the place and time and with the information required by the prison's administrative rules. *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002).

In this case, defendant Peterman argues that Berry did not follow the Jail's grievance procedure. Peterman contends that the Jail's rule book lays out a clear four-step grievance process, requiring inmates to first file a grievance with a correctional officer, and then appeal that resolution initially to the Corrections

Corporal, then to the Jail Administrator, and finally to the Sheriff. Peterman argues that Berry failed to comply with this procedure, as Berry filed requests for dental care to which medical staff replied, but Berry did not appeal these decisions to a correctional officer or to a Corrections Corporal before filing a complaint addressed to Peterman, who was the Jail Administrator.

Berry argues that he did properly exhaust the grievance process. Berry filed a request on an Inmate Communication Form, asking "Does Waushara County Jail has a grievance system, if so how does it works?" Berry received a response from a Corrections Corporal, dated April 12, 2008, stating "TO FILE A GRIEVANCE, USE AN INMATE COMMUNICATION FORM AND ADDRESS IT TO WHOEVER YOU WANT AT THE TOP OF THE FORM." This response does not indicate that any particular box must be checked on the Inmate Communication Form, or that the grievance system requires consecutive filings with all four levels of command at the Jail. Nor does this response refer to the complaint section of the inmate rule book, which states:

> When informal resolution is not possible, written complaints and decision appeals are to be submitted in accordance with the chart below. Written complaints not filed in accordance with the chart will be dismissed. All complaints properly submitted and forwarded will be reviewed by the applicable staff member(s).

The chart appears as follows:

<pre>
                          Sheriff
                            ^
                      Jail Administrator
                            ^
                     Corrections Corporal
                            ^
         Court -----Correctional Officer-----Fiscal Manager
                            ^
</pre>
**Inmate**

(Inmate Rule Book, Complaints, page 24 of Exhibit 1 to the Affidavit of George Peterman) (emphasis in original).

This chart shows the chain of command in the Jail, but the directions are unclear. In fact, the chart's arrows suggest that a "properly submitted complaint" will be administratively forwarded up the jail's hierarchy for resolution once filed, rather than indicating that the inmate must re-file his complaint at each level. The design of the Jail's Inmate Communication Forms ("ICFs") adds to the confusion. The Inmate Rule Book states:

> The inmate communication form is a general purpose document used to request a variety of services and programs. The form can be used to submit an appeal, complaint, concern, request medical attention or treatment or convey information to a staff member.

*Id.* at 23. The ICFs have lines to check indicating that the ICF is either a "Request," "Complaint/Concern," or "Appeal," but there is no designated space to address the form to anyone.

Berry filed six unaddressed ICFs in early April 2008 regarding his tooth pain and desire to be seen by a dentist. Two of these six unaddressed ICFs were marked as requests, two were marked as appeals, one was marked as a

-8-

complaint/concern, and on one ICF no category was checked. Nurse Dave (defendant Reich) responded to all six of these unaddressed ICFs, and Berry accordingly directed eight subsequent ICFs seeking dental care to defendant Reich by writing "Nurse" or "Nurse Dave" across the top of the form. This course of action is consistent with the instructions that Berry received from the Corrections Corporal on April 12, 2008, stating: "TO FILE A GRIEVANCE, USE AN INMATE COMMUNICATION FORM AND ADDRESS IT TO WHOEVER YOU WANT AT THE TOP OF THE FORM." Furthermore, Berry addressed an ICF marked "Appeal" to Peterman on May 18, 2008, stating that nothing had been done regarding his need to see a dentist despite his continuing pain and problems eating and sleeping. Peterman did not respond by dismissing the appeal for failure to file it with a corrections officer and the Corrections Corporal, as he should have done according to his interpretation of the grievance procedure. Nor did he forward the appeal up the chain of command to the Sheriff, or direct Berry to do so. Instead, Peterman forwarded the form to the medical staff, where "Nurse Dave" responded once more.

Given the ambiguity of the complaint procedure published in the inmate rule book, combined with: the written instructions given to Berry that the Jail's grievance procedure required only that he use the Inmate Communication Form and "address it to whoever [he] want[s]"; Berry's persistence in filing at least 20 ICFs clearly notifying staff at the Jail of his pain and desire to be seen by a dentist; and Peterman's failure to advise Berry that he must lodge appeals at various levels, the

-9-

court finds that the defendants have not met their burden of establishing that Berry failed to exhaust the administrative remedies that were available to him. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) ("Failure to exhaust is an affirmative defense, and the defendants did not meet their burden of proving that [the plaintiff] had available remedies that he did not utilize."); *see also Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) ("Because Dole properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that Dole failed to exhaust his remedies.").

### Objectively Serious Medical/Dental Need

Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, and thus is prohibited by the Eighth Amendment. *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (*citing Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). The Court of Appeals for the Seventh Circuit has stated that "dental care is one of the most important medical needs of inmates," and that dental problems can constitute objectively serious harm. *Board v. Farnham*, 394 F.3d 469, 480-81 (7th Cir. 2005).

The defendants argue, however, that Berry cannot establish that his dental problems were objectively serious, because canteen records reflect that Berry bought large quantities of junk foods, which should not be consumed by someone with a serious toothache. In addition, the defendants note that on February 25, 2008, Berry received a Dental Classification of "20" signifying that he had "Routine or Chronic Dental Needs" with "No acute episode likely in the next six months." Finally, the defendants contend that defendant Butler did not observe any infection or chipped or broken teeth when she looked at Berry's mouth during medical examinations on April 17, 2008, and April 24, 2008.

Berry responds that his dental condition was objectively serious because he experienced intense pain and headaches which caused him to have to chew on only one side of his mouth and kept him awake at night. Berry also submits a copy of his Department of Corrections ("DOC") dental chart in support of his claim that his dental needs were serious. The chart notes dated June 12, 2008, state: that Berry had a "Priority Appt" that day; that one of Berry's teeth "fractured off last year"; that Berry's #19 tooth "was clearly necrotic"; and that "extraction was recommended." Those notes further reflect that Berry was "prone to arguing" and that a pulpotomy (root canal) rather than extraction was performed on tooth #19 because Berry didn't "wanna lose another tooth."

A reasonable fact finder might find it suspicious that Berry continued to buy an array of hard and sticky candy from the canteen throughout the period during

-11-

Case 2:08-cv-00421-JPS   Filed 09/23/09   Page 11 of 16   Document 81

which he complained that his chipped/cracked tooth was causing him to suffer intense pain. However, in an ICF dated April 24, 2008, Berry states that because of the pain, he has "to chew on one side of his mouth," and several of his other ICFs state that he is having pain and difficulty eating. While Berry's unwise nutritional choices may well have aggravated his dental condition, at summary judgment all inferences must be drawn in his favor. Berry may have had limited dietary options at the Jail, and his purchase records alone do not establish the manner in which he consumed the items, or even if he consumed the items himself. If he did consume the candy he purchased, Berry might have let it dissolve in his mouth, or chewed it on the side away from the troubled tooth, as his ICF implies. Similarly, while the defendants suggest that Berry's purchase of ramen noodle soup is suspicious because Berry claimed that temperature changes in his mouth were painful, common sense indicates that soup can be cooled to room temperature before consumption. Accordingly, while Berry's canteen purchases may be relevant to whether Berry suffered a genuinely painful tooth condition, they are not determinative.

More useful is the DOC dental chart, reflecting that Berry had a "priority" appointment and root canal performed on June 12, 2008, less than a week after leaving the Jail on June 6, 2008. This supports Berry's claim that he was suffering from a serious and painful dental problem while confined at the Jail from March 28, 2008, until June 6, 2008. While Berry's February 25, 2008 Dental Classification

stated that he had "Routine or Chronic Dental Needs" with "No acute episode likely in the next six months," Berry's many ICFs from early April 2008 through late May 2008, all requesting to be treated by a dentist, show an escalation of reported symptoms from initially moderate pain and sensitivity to intense pain and headaches interfering with sleep and eating. Drawing all inferences in Berry's favor, the severity of Berry's reported dental pain may have constituted an objectively serious medical need. *See Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008) ("a 'serious medical need' exists where the condition features 'chronic and substantial pain'") (citing *Guiterrrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (inmate's allegations of bleeding, headaches, "disfigurement," and inability to chew food demonstrated a serious medical need for dentures); *see also Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (tooth cavity presents "serious medical need" because if left untreated "it is likely to produce agony and to require more invasive and painful treatments, such as root canal therapy or extraction"). Accordingly, the court will consider the second prong of an Eighth Amendment claim, whether the defendants were deliberately indifferent to Berry's dental needs.

**Deliberate Indifference**

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. A finding of deliberate indifference requires evidence "that the official was

-13-

aware of the risk and consciously disregarded it nonetheless." *Chapman*, 241 F.3d at 845 (citing *Farmer*, 511 U.S. at 840-42). To survive summary judgment, the plaintiff "need not prove that his complaints of severe pain were 'literally ignored'; rather he must show only that the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, 546 F.3d at 524 (internal citations omitted).

Berry contends that it was unreasonable for the defendants to fail to send him to a dentist, as they must have known that only a dentist could competently examine his dental condition. However, Berry cannot overcome the record showing that he was offered repeated medical examinations to screen for an emergency dental situation. Defendant Butler states that she did not see any sign of infection or other emergency dental condition when she examined Berry twice in April of 2008. Defendant Peterman was entitled to rely on this assessment. *See Hayes,* 546 F.3d at 527 ("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one."). Similarly, Nurse Reich was entitled to rely on Dr. Butler's conclusion that Berry did not require emergency dental care. In addition, Reich responded promptly to Berry's many complaints by offering advice on minimizing pain, arranged for Berry to try a different pain reliever approved by the

doctor, and offered to schedule a third medical examination if Berry would request one.

Berry argues that it was improper for defendant Butler to render an opinion regarding Berry's need for dental services, because Butler is a medical doctor without dental expertise. Perhaps it would have been prudent for Butler to promptly refer Berry to a dentist when Butler was unable to identify a dental cause of Berry's pain. However, even if Butler was negligent in failing to recommend that Berry be seen more quickly by a dentist, there is no evidence that Butler knew that Berry needed a root canal. Nor did Butler completely disregard Berry's pain. Butler continued Berry's pain medication, and switched it once in response to Berry's complaints. In addition, Berry was confined at the Jail for only ten weeks, and did not request any additional medical examinations after Butler examined him twice in April of 2008. Perhaps if Berry had asked to see Butler again, the progressive nature of his dental problem would have been visible, or Butler might have suggested a more effective pain management regimen.

In conclusion, the record does not support a finding that any of the defendants acted with deliberate indifference to Berry's complaints of dental pain. Both Peterman and Reich properly deferred to the medical assessment made by Dr. Butler, who treated Berry's pain and examined him twice, but did not see any indication of infection or other emergency dental needs. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008) ("Before a doctor will be found deliberately indifferent, the plaintiff must show subjective indifference. The nub of this subjective

-15-

inquiry is what risk the medical staff knew of . . . No evidence shows that Dr. Ahmad suspected cancer or actually 'drew the inference' that Duckworth's symptoms posed a major medical risk.") (internal citations omitted).

Accordingly,

**IT IS ORDERED** that the motions for summary judgment of defendants Reich and Butler (Docket #46), and of defendant Peterman (Docket #52), be and hereby are **GRANTED**, and this action be and the same is hereby **DISMISSED** on its merits together with costs as taxed by the Clerk of the Court.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge